Case number 16-1385, National Labor Relations Board v. Alternative Entertainment Incorporated. Oral arguments not to exceed 15 minutes to be shared by Respondents Amicus and 15 minutes to be shared by Petitioner Amicus. Mr. Timothy Ryan for the Respondents. Good morning, Your Honors, and it is a pleasure to be here. My name is Tim Ryan from the law firm of Jackson Lewis, and I represent the Respondent in this case, Alternative Entertainment. With the Court's permission, the way that we would like to split our time, Mr. Taggart is from the U.S. Chamber. He submitted an amicus brief. He would take seven minutes. I'll take five minutes. And the topic that I intend to address is the discharge of Mr. DeCommer. And, of course, Mr. Taggart will address the subject of his amicus brief, the class action waiver issue. Of course, we're open to whatever questions you would have on either of those topics. And then you're reserving three minutes for... And we're reserving three minutes for rebuttal. And with the Court's permission, we'll decide which of us takes that three minutes after we hear. All right. Thank you very much. So the question here on this discharge issue, I guess, is, as it always is in these cases, was there substantial evidence to support the decision that Mr. DeCommer was illegally discharged? And, of course, the theory of the case is that he was discharged for engaging in concerted activity. There are three reasons why I think each of which leads you to the conclusion that you can't say there was substantial evidence here. The first of these is that the theory on which we end up having the ruling that there was an unfair labor practice is entirely different than the theory that was alleged in the complaint. In the complaint, what the Board said was on three specific dates in November and December of 2014, I guess it was, or 15, Mr. DeCommer and other employees complained about their wages and that that's the reason why he was fired. Well, if that's true, if that were true, if there had been a joint complaint like that made, I don't think anybody would argue it wasn't concerted activity. But what the evidence at the trial showed was none of that happened. On those dates, there was no joint complaint. It was only Mr. DeCommer complaining by himself to his employer about his pay. So then we get a decision from the administrative law judge, and he says, well, it comes up with a whole new theory. And the theory is, well, you didn't fire, isn't that he was fired because of the complaints he made? It's because of his discussions behind the scenes and background with his coworkers. That's a whole different theory of concerted activity. That's a whole different case that requires different evidence and different witnesses, and nobody knew that was part of the case until we got the decision from the administrative law judge. Was there evidence on that topic that was presented in front of the ALJ? There was evidence from Mr. DeCommer testimony where he gave vague descriptions of some conversations he had with these employees. He was, except for maybe one or two names, he was not able to identify who these employees were. He was not clear on when these conversations took place. And the nature of the conversations, if you read the record, is extremely vague. Was a key issue whether DeCommer was told by somebody in the AEI not to talk about wages? So it doesn't matter whether he did talk to John versus Joan versus Harry. The question is, did he disobey this order hypothetically not to talk to anybody? Well, and that gets us to the question of knowledge. I mean, you're right, there is that allegation, and that's a separate unfair labor practice, that he was told not to discuss his wages with other people, which, if it had happened, would be an unfair labor practice. And the judge found, based on the testimony, we dispute that, we don't admit it. But I'm not here arguing that there's not substantial evidence to support that because there was the testimony. But the key, I think, is the knowledge issue. Everybody agrees that a necessary element of proving the discharge case is you have to show the people who made the decision to discharge knew about the concerted activity. So if we're going to say that this new theory of concerted activity is legitimate, then somebody's got to have knowledge that he had these background conversations. And the conversation you're talking about is one where the judge, the way the judge says very plainly in his decision, there's no direct evidence of knowledge. Then he goes on to say basically, but I'm going to infer it because Mr. Robinson told Mr. Decommer to stop talking to other employees. And, of course, if he had said stop, that would certainly suggest he had knowledge it was going on. The problem is the word stop does not appear in Mr. Decommer's testimony in the record. That was totally added by the judge. So if we go back to the substantial evidence standard, how can a necessary element of their case, according to the judge, is dependent on testimony that does not exist. And so you cannot have, it does not meet the substantial evidence standard. So if the word stop was not there, could the communication have included, in effect, an order to stop even though the word stop was not there? I don't think you can read it that way. Can you say what the testimony was exactly? Or give us the page record if you have it. I think it is on page 32. Of what? I can find it very quickly for you. Well, I don't want to deter you. We've only got five minutes. It is quoted in our brief. Did Decommer tell Humphrey that he had talked to other people? There's no testimony that he told. There is some, again, very vague testimony that the board in their brief characterizes as Mr. Decommer saying to another person in the presence of Mr. Humphrey that he had talked to other people. But if you read the testimony, and I'm sure this is what is on page 32 of the transcript, if you read the testimony, 31 and 32, it is not clear where Mr. Humphreys was. And it is not clear what Mr. Humphreys may or may not have heard. You cannot, I don't think you can read that testimony and discern from it that you could fairly read it to say that would show Mr. Humphreys knew. And, in fact, neither the board nor the judge, the administrative law judge, point to that testimony. So they didn't find that that supplied the necessary knowledge element. Now, given your very short time, it is now expired. Oh, yeah. Your red light is on, so you can take time away from your colleague if you wish. I don't wish to because I think that's a very interesting issue that I want to hear about. Thank you. Thank you, Your Honor. My name is Evan Tager, representing the Chamber of Commerce of the United States. On the, what we call the D.R. Horton issue, the whole case boils down to whether the D.R. Horton rule comes within the FAA's savings clause. Because the board does not contend that the rule satisfies the Supreme Court's strict contrary congressional command standard. If the rule doesn't come within the savings clause, we win the case. So let me turn directly to that question. The board's argument rests on the following syllogism. The savings clause allows the invalidation of arbitration provisions on grounds that are equally applicable to all contracts. Illegality is one such ground. We, the board, have determined that class waivers in all employment agreements are illegal under Section 8. Therefore, the D.R. Horton rule falls within the savings clause. The problem is that this is exactly the same syllogism that the Supreme Court rejected in Concepcion. Just substitute the word unconscionability for illegality and you have the exact same syllogism. The plaintiffs argued there that one, unconscionability is a defense that applies to any contract. Two, the California Supreme Court held in the Discover Bank case that class waivers in consumer contracts of adhesion are generally unconscionable. And therefore, three, the Discover Bank rule fell within the savings clause. I think I understand that point. I'm curious for both of you. Is there case law that says whether the savings clause only applies to state law rules? Because what's a little – that is different from Concepcion. That was a state law rule. Here this is a federal – comes from a federal statute. Is that irrelevant? Is there case law that tells us? I think that's a great question. I've been pondering it. I don't know that there's case law in it. I think conceptually it does because – It does apply to federal. It does because it doesn't – it's not limited in its terms. So if there is a – let's say a case is governed by federal common law and if the court supplies a federal ground that is neutral, then I would think it could apply under the savings clause. Now, I understand there's arguments that the savings clause should not apply at all and that they're stuck with the contrary congressional command. But looking at the savings clause in 9 U.S.C. Section 2, there's no indication within the savings clause that it's limited to state law. That's what I was saying. Yeah. I'm just trying to figure out where that – such a limitation would come from because it says save upon such grounds as exist at law or in equity for the revocation of any contract. Yeah, I think if people were to make the argument, it would be based on Italian colors and saying, look, the Supreme Court there, they just dealt with contrary congressional command. They didn't worry themselves about the savings clause. But we're not – we're going to address the argument head on. We're not going to argue, although I think it's worth considering for the court, but we're not going to argue no, no, no, it doesn't apply at all. And so they really – There's no case law at this point that's said one way or another on this point. I mean it clearly applies to state law because that's where it's – Yes. Most often. And I think when Congress enacted it, it was thinking of state law because that's what governs contracts by and large. But you do have two circuits, the 7th and the 9th, that have rejected your position. Yes, and they're just wrong because – Judge Wood is wrong? Yes, Judge Wood is wrong. Judge Ikuda is right. I thought you would say Justice Lew is right. Very well said, as well as the majority on the 5th Circuit. But the point is they did not – they distinguished conception on the ground that it's a state law case. But as the court just said, the savings clause applies equally and – They didn't say the savings clause is not applicable because there's federal law involved. They just said we can ignore conception because it's a state law case. But the principles in conception apply equally. The savings clause does not apply if the ostensibly neutral principle would frustrate the purposes of the Arbitration Act. And the Supreme Court said that conditioning the enforcement of arbitration – of an arbitration provision on the availability of class procedures in either court or arbitration would frustrate the purposes of the FAA. Another way of saying it is the savings clause either doesn't apply to federal law. But if it does apply to federal law, it applies in the exact same way it applies to state law because it says law. You can't treat it differently. It doesn't apply at all or it's the same. That's exactly right, and I would add that that's what the Supreme Court said in the conclusion of Italian Colors. On page 2312 of 133-S court, the plaintiffs in that case made the argument that the policies underlying antitrust laws required invalidation of the arbitration provisions containing class waivers. And the court said in the conclusion, truth to tell, our decision in conception all but resolves this case. There we invalidated a law conditioning enforcement of arbitration on the availability of class procedure because that law, quote, interfered with fundamental attributes of arbitration. So there you have the court sort of tying up the last little piece of it. What was the subject area in conception of the law? Was it in the NLRA context, in other words? No. No. It was California had a statute, which by the way, the board gets wrong. It's not just some made-up state law rule. It was a statute prohibiting exculpatory clauses. And the California Supreme Court said in Discover Bank that in consumer contracts of adhesion. Maybe I'm sorry to interrupt you, but I think we get this point. Maybe the way in which it makes a difference, if the Savings Clause does apply to federal law, one way you might say that the law at issue is different if it's federal versus state is if the federal law is implemented by an agency that gets deference with respect to interpretations of the statute. Which gets you to the role Chevron deference plays or does not play in this case. I'm sure everyone agrees here the agents, the board gets deference when it comes to explaining what Section 7 does and why and so forth. That seems to me, I assume you would agree with that. If it's reasonable, they get deference on that, don't they? As a general principle, we would agree with that. We would not accept that that's a reasonable interpretation of Section 7. But for purposes of our argument, we accepted it for purposes of the argument to contend that the FAA. They get no deference when it comes to the Savings Clause. Exactly. So they get to, as long as it's reasonable, they get to explain how Section 7 works, why they can maybe even say concerted action covers class actions, I guess. That's exactly right. I think they're probably allowed to do that. And that's why we sort of didn't spend our efforts on that argument. If you had a contract, an employment contract that said nothing about arbitration but just any lawsuits you want to bring against this, you have to bring on an individual basis. Then the FAA would have no place in the case. And if the board's interpretation is a permissible one, then they could say that's an unfair labor practice. But as soon as it's part of an arbitration agreement, same thing as in Concepcion. California Supreme Court is perfectly entitled to say and has said that if you've got a contract that bars class actions, a consumer contract that bars class actions, it's unenforceable. So if it didn't involve arbitration, there's nothing in Concepcion that prevents California from saying you can't do that. But if the Supreme Court held in Concepcion and then reinforced in Italian colors. What about viewing this as the NLRB is saying that there's a right in Section 7 to concerted action. And the whole of the NLRA has been protecting the right of concerted action. And so the savings clause is saying that you can have the concerted action that the NLRB and the NLRA protect. And they're protecting it in a variety of ways. So it's not treating arbitration as some uniquely bad area but giving full effect to the right to bring collective concerted action. Well, I think you would say the same thing about California and exculpatory clauses. But in any event, this whole argument about there's this right, it's not clear to me how that changes anything about what the Supreme Court said about the savings clause, which is if it has a disproportionate impact on arbitration as conditioning enforceability on the availability of class procedures does. Then it doesn't qualify for the savings clause. That's the holding of Concepcion reinforced in Italian colors. So I think there's a very powerful argument that they're wrong, that it's substantive. If you look at Section 1, it describes it as a procedure. If you look at the Emporium Capo case, which the board ironically cites but not for that proposition, they call it a procedure and the Supreme Court does. And it makes sense. The idea that you can just sort of wave a wand over something that we all know. This is the duck. It quacks like a duck. It sounds like a duck. It walks like a duck. Class actions are procedural. And you can't just wave a wand over them and say, oh, they're substantive for purposes of this act. And therefore, nothing the Supreme Court said in Concepcion or Italian colors matters. So obviously I'm well over my time. We've taken you over, but we thank you very much. Thank you, Your Honors. Good morning. May it please the Court. Joel Heller from the National Labor Relations Board. I will take 12 minutes, and Counsel for Amicus will take three. Fine. The NLRA protects employees' right to act collectively, but AEI's policy requires employees to act individually. AEI's policy thus violates the NLRA's prohibition on interference with Section 7 rights and is an illegal contract under federal law. There's no real challenge today to the Board's findings for which it receives deference that concerted legal action is Section 7 activity and that prospective individual waivers of that right, like AEI's, violate Section 8A1 of the NLRA. And these are areas under Chevron for which the Board receives significant deference. So help me out with this. Let's say under Chevron deference you get to take the phrase concerted action and say it applies to class actions, which isn't self-evident, but for the sake of this question, let's just say that's right. So that just makes the case like Gilmer to me. I mean, there you have in the ADEA setting a statute that's about age discrimination but incorporates Section 216 from the FLSA, so it allows for collective slash class actions, and yet waivers were upheld there. So, I mean, I just feel like that's the harder case. The whole statute says, it doesn't say concerted action, it says in order to enforce this right, we're going to give you the right for class action relief because it's important when it comes to age discrimination claims, which, of course, is a lot like the worker rights here, and I just don't understand how that could be allowed, and Scalia refers to it in Italian colors, and Gilmer, we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute issued the ADEA expressly permitted collective actions. This one's not even expressed. I think you've already mentioned two of the reasons why Gilmer is different. One, it was under the ADEA rather than the NLRA, and the heart of the NLRA is protecting concerted action. The heart of the ADEA is prohibiting age discrimination. So would this case come out differently if it was an FLSA case? And it was a 216 waiver? It was a waiver of the 216 right in the FLSA? Would the case come out differently there? So the important part is whether the employees bringing the case are covered by the NLRA. We take no position. What's the answer? I don't think the U.S. Supreme Court has addressed this issue. How does the case come out in an FLSA waiver setting? So you've waived your right to class actions. FLSA has 216, and it gives you that right. Does it come out like Gilmer, or does it come out differently? If the employees bringing the FLSA claim are statutory employees under the NLRA, if they have a Section 7 right, then the waiver is unlawful. It violates Section 8A1. And if they're not? And if they're not covered by the NLRA, then that's a different question. This court has not addressed. Other courts have, but this court has not addressed whether. Then it comes out like Gilmer in that setting. Other courts have decided. The Sixth Circuit has not. No, no, I'm asking what you think is the right answer. Well, I'm not here to interpret the FLSA, so I will leave that to another case. But all I'm saying is that the board's position is that if they were covered by the NLRA, that case would turn out like the board's decision in Horton and Murphy Oil rather than Gilmer. There was not evidence that Gilmer was a statutory employee in that case. The other point you mentioned is that the ADEA permits collective actions, but the NLRA guarantees the right to concerted activity and makes interference with that right unlawful, makes it an unfair labor practice under Section 8A1. So those are the two key distinctions with Gilmer. It is also well established that federal courts will not enforce illegal contracts, including contracts that violate the NLRA. Look at the Supreme Court's decision in Kaiser Steel, for example. So the only question left is whether there should be a different result, whether federal courts should enforce illegal contracts. You asked earlier about federal versus state law when it comes to savings clauses. Is there authority on that that we can just look at and say, don't worry about it. It covers federal and state law. There is no case that says one way or the other, but as Judge Moore mentioned before. Not even a district court case. I'm not familiar with any other than the dissent in the Ninth Circuit, which says it covers only state law claims. But that's contrary to the text of the FAA that says, save upon grounds that exist at law or in equity, not at state law or in equity. The savings clause didn't come up in a case like Italian Colors because no one was making a savings clause argument in Italian Colors. Italian Colors was about, there wasn't a question about the validity of the contract. I think on the savings clause, that's not your hard case. The hard case is Concepcion. Concepcion is distinguishable, and I would say Judge Wood is right on this one, in that it's not just state law versus federal law, though that is certainly a key distinction because when you have two federal laws, the Supreme Court has instructed that both must be given effect to the extent possible. But it's also that the policy in Concepcion was a generalized, judge-made policy, a gloss on California unconscionability statutes that was meant to – On your first point, the way your interpretation respects the FAA and the NLRA is just by saying the FAA is covered by the – I mean the NLRA is covered by the savings clause. That's your respect? Well, the FAA does contain a savings clause. It is part of – I know, but that's how you're – when you say you're trying to dignify them both, that's your form of dignifying. It gives effect to the FAA by giving effect to the savings clause in Section 2. It gives effect to the NLRA by preventing a violation of 8A1. It is AEI's position that gives effect to neither statute by ignoring the savings clause and permitting a violation of Section 8A1. Back to Concepcion. As the distinction with Gilmer, it's important to note that this is an NLRA case, unlike Concepcion. The Discover Bank rule was, again, this kind of gloss, a judge-made gloss, on unconscionability principles. But in Section 7, you have an express statutory protection of the right to engage in considered activity, and in 8A1, you have a specific statutory prescription on interference with that right. The – So back when – in the 30s when these labor laws were enacted, it's true you didn't have Rule 23, but you had collective actions and so forth. So, I mean, is there any evidence in the legislative history or anywhere that concerted action referred to class actions or collective actions or any other formulation used at law in the 1930s or before? Section 7 is written very broadly. It says – it gives a couple examples and then says other concerted activities for mutual aid or protection. And the Supreme Court said in city disposal that Section 7 is not limited to any particular type of concerted activity. It is for the board – That's what it said. It refers to collective actions. The Supreme Court in East Ex talked about how the Section 7 right is a broad one and has been held to include resort to judicial and arbitral forms. And the board, since the very early years, going back, I believe, to the 1940s, has held that Section 7 covers concerted legal activity and has done so throughout the present day with court approval. I'm asking about class actions and collective actions. I'm just asking if anyone's ever said it applies to Rule 23-like procedures. The board has. There's nothing in the legislative history specifically about concerted legal action, whether that be class action, joined, or any of these, because this is not just about Rule 23 class actions. This is about concerted legal action more broadly. But again, since the very beginning of the Act and with court approval, the board has held it to be, including in a board case called United Postal Service or Parcel Service that this court enforced. The board held that it – I believe in that case it was an FLSA claim, but I might be wrong – was protected activity under Section 7. One question, I guess, for both of you, everybody, is there's a bunch of cert petitions up at the court on this issue. What's your preference here? Is your preference for us to march ahead no matter what the court does, wait to see if the court grants review, and then still march ahead or hold it in abeyance? What would you like us to do? You're right that there are several cert petitions pending. The Supreme Court has not ruled on any of them. The board would certainly appreciate another view of the case from this court. Even if cert's granted? Even if cert is granted. We will leave that up to this court's discretion. And then the other potential elephant in the room is you don't have agency, the way you do with most executive branch agencies with a new president, a potential for a prompt change of position, because here it's a function of who's on the board, right? And that could take a long time, I take it. The board members serve for terms, yes. Right, so there's no reason to think, as with other agency deference issues, there could be a change of position anytime soon. So that's not a reason to wait, is my point. Right, I don't think so. The other distinction I wanted to make with Concepcion is that the policies at stake in Concepcion and also in Italian colors were about collective action to incentivize the bringing of other claims, whether it be consumer protection claims in Concepcion or antitrust claims in Italian colors. But the NLRA, the concerted action under the NLRA is the right under the NLRA. It is not a tangential or incentive to take some other action. It is the right that the NLRA protects. What makes this a substantive right as opposed to a procedural right? Yes, I think you can classify it in those terms, that it's substantive because it is the core right under the NLRA. Everything else in federal labor law extends from that. Even if they invoke Rule 23, and the whole case is decided under Rule 23, Rule 23 becomes substantive because the NLRB has made it substantive. Well, the source of the right to concerted action is not Rule 23. It's the NLRA. I understand, but it's alchemy. I mean, you start with concerted action. You have procedural Rule 23. Presto, Rule 23 is substantive. Well, Rule 23 is a mechanism for the exercise of the substantive rights under the NLRA. That's why it's called procedural. It's like a handbill or a picket sign. Employees have a right to picket, and they use a picket sign to exercise that right. Employees have a substantive right under the NLRA to engage in concerted legal action. But the action in fairness is not going to be a, quote, concerted action with new rules for certifying concerted actions. Right. Ascertainability and opt-in and opt-out. It's going to be Rule 23, the whole thing, right? Rule 23 or – sorry. I'm just going to ask you, would it matter? Let's say that there was a provision that said you can't use Rule 23, but here's a different procedure for proceeding collectively. If there was an employer policy that said that? Yeah. No, I don't believe that would be different. Employers don't get to pick and choose what types of concerted activity their employees can engage in. But then I have a problem with what you're saying, because if the right is to proceed collectively and not to any particular procedure, then it would seem that if there's a fair vehicle for proceeding collectively, you shouldn't have a complaint, because that's the core value of the NLRA, that you're saying they're being deprived of. They are being deprived of their right to engage in concerted legal action in some forum. This is not just about arbitration. If there was a judicial forum available for concerted legal activity, the employer could require that all arbitration proceed individually. The Board has said that. But just as an employer cannot say, well, you can picket on Tuesdays but not on Thursdays,  the employer can't say you can only engage in certain types of concerted legal action that we like. The Section 7 right is undifferentiated. So the employer could not say, we demand that you arbitrate all disputes, and you can do it in concerted actions. That would not be acceptable to the NLRB? Let me make sure. It has to be arbitration, but it can be concerted. It can be concerted arbitration. Would that be acceptable? Yes. That would not be a violation. The Board said as such in Solar City. Solar City. Yes, which is cited in the briefs. Have you worked through, I mean, I haven't worked through this, but there's a lot of different Rule 23 mechanisms. It's not always obvious they're helpful to the plaintiffs. Some of them are helpful to the other side. First of all, do people really want to go down this road, question number one? This is really in the Board's interest when it comes to the workers. Second, if my suspicion is right, that there are parts of, let's just focus on Rule 23, that are quite hurtful to workers if they bring these actions, do the workers then get to say, well, you don't apply that part of Rule 23 because that's interfering with our concerted action right? Is that what's going to happen, or do you get to take all of Rule 23? I'll answer your second question first. Yes, you have to take all of Rule 23. The Board's position is not that... You want this for opt-in, opt-out, you want it for all of the different... It's your employee, it's your choice. That's the key holding of the Board's position. If the employees choose to go down that road, it may be a bumpy road, but that is their choice. Section 7, Section 8, no part of the NLRA affects how Rule 23 works. So there's no... A judge faced with a Rule 23 action in this setting would not have to lean towards certifying to further the purposes of the NLRA. Am I right about that? Yes, you are right. If the employer comes back with a defense on the merits to certification, you don't meet the numerosity requirement, for example, as long as that is a generally applicable defense. That is not targeting concerted action as concerted action. In the numerosity example, it would say... The employer is essentially saying you're not concerted enough. So the Board's position is not that those kind of merits defenses to certification. The opt-in, opt-out, you've worked through that. I just have a strong suspicion this is not going to work out well. Well, that is, I guess, a policy argument that employees will have to figure out for themselves as time goes on. Because, right, it's not... The Board's position is that employers cannot prevent employees from engaging in concerted legal action. It's not that employees must engage in concerted legal action. That choice is for them to make free of employer interference. That is the core of the Board's decision, that it is the employee's choice. Whether it's a good or a bad choice for them, that's not for the Board to decide. It doesn't count as interference to oppose class certification or raise all kinds of arguments. So long as it is a kind of generally applicable defense, as we were talking about, and not opposing class certification on the basis of a policy like AEI's that just says no concerted legal action, or in effect says no concerted legal action, then yes. But you're saying you agree that the employer can require that it be done in arbitration, as long as it permits collective... As long as there is some forum open for concerted legal action, yes. Because at that point, it's for the employee to choose whether to proceed individually or to proceed collectively. And that is the right that they have under the NLRA. And that is the right that employers cannot interfere with under Section 8A1. Employers like AEI cannot do through arbitration what the NLRA expressly prohibits them from doing. Thank you. Your red light's been on for a while, too. And we'll rest on our brief for the other issue. Thank you. Mike Becker. I represent the amicus AFL-CIO. I'd like to begin exactly where the Chambers Council ended, because this case is not only about the savings clause. And I think the Seventh and the Ninth Circuit and the NLRB has done an excellent job on the savings clause issue. There's two other issues. One is that the agreement here does what the Supreme Court says agreements may not do, which is waive a substantive right. And let me go directly to your question, Judge Sutton, about what is a substantive right. Collective bargaining is a core substantive right of the NLRA. It is a process. The First Amendment creates a right to petition. That just begs the question of whether concerted action is meant to cover this unique procedural device, Rule 23. I mean, there's no evidence in legislative history. And it's not just that Rule 23 is 1966. It's not a chronology problem. There were collective actions back in the 1930s. There's no one was thinking that's what their phrase referred to. So I get what happens if you say it incorporates the phrase. I get that. But I just find it very difficult to get there. And I even think it's unreasonable to get there. Your Honor, the question of the construction of Section 7, as you have pointed out and as counsel for the Board has pointed out, is subject to Chevron deference. And the Supreme Court has made very clear that Section 7 encompasses not only attempting to improve terms and conditions directly through the employment relationship, collective bargaining, strikes, picketing, but through other means, such as petitioning the courts. That's what the Supreme Court has said. The Board, in an unbroken line of cases, has said collective. Yeah, but I'm allowed. We're allowed in thinking about that issue about this federal statute, which has another very strong policy. In fact, the irony of all this is that's what Norris LaGuardia was about, was furthering arbitration. And here we have the Board saying arbitration is suddenly bad. I mean, it's very odd. Your Honor, the Board is not saying arbitration is bad. Employees can opt to go to arbitration. If the employee thinks that arbitration is the better option for all the reasons that you've outlined, an employee can make a choice to go to arbitration. All that the Board is saying is that the employer cannot require as a condition of employment that the employee give up its right to take collective action, his or her right to take collective action, either in court or in arbitration. My second point was going to go directly to that question of the Norris LaGuardia Act because what's also unique about the NLRA here is not only that the right at issue to take concerted action in court or arbitration, it's not simply Rule 23, as my colleague has pointed out. It's 216 of the FLSA. It's even joiner. They can't even go with another employee into court and join the two claims, even if they're parallel. It's a much broader prohibition than simply Rule 23. So it's a substantive right. It's the core right protected by the statute. Unlike Gilmer, the parallel to Gilmer is that the agreement in Gilmer said you can bring age cases. You just can't do it if you're over age 85. That's what this agreement provides. So what happens, just to work through this, but let's just say someone takes the view that Concepcion applies here when it comes to construction of the savings clause. Okay, so I realize that's bad for you. You don't agree with it. So that's why it's hypothetical. But just say, hypothetically, a court or a judge thinks, huh, I just think that applies here, just as strongly as it did in Concepcion. What then happens? What do you do with the case then? I assume you don't concede. I assume you would say, oh, that doesn't mean we lose. How do you argue the case then? There would be two further steps to the analysis, Your Honor, and that's where I tried to begin. That is, if you were to agree with counsel to my left here that the savings clause does not apply, you'd have to go two different steps. The first is, is it a waiver of a substantive right? And I think it's important to understand what that substantive term means. It doesn't mean substance versus process in the way that we ordinarily think of it, say, for hearing purposes. Can I just stop you there? I mean, I want to hear what you're saying, but just so you understand where I'm coming from. Once the savings clause is out of it, don't you, in interpreting Section 7, have to be thinking about the FAA? I mean, at that point, because your main argument is you can consolidate them, respect both of them through the savings clause. But if that washes out, you still have the FAA, so you still think it's okay to say, hey, Section 7 is a substantive right and concerted action covers Rule 23 and other class action mechanisms. Yes, Your Honor. How is that being respectful to the FAA, though? If you look at the FAA jurisprudence that we've all cited, Concepcion, Italian colors, et cetera, Gilmer, all of those cases say you can have an agreement for arbitration, but what that agreement cannot provide is a waiver of the substantive right. Let's say Italian colors explain that, quote, that exception would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. Forbidding the assertion of certain statutory rights. That's exactly what the Board has held. To take collective legal action is no different to engage in collective bargaining. Why wouldn't the fairer approach be you can still do concerted action, you can still share expenses, you can still – you can have the same counsel, you can share expenses. That just seems like the much more natural way of accounting for both statutes, particularly in a world in which the U.S. Supreme Court has applied the FAA to lots of class action waivers. Right? I mean, if you're going to respect those decisions. In answer to your question and going back to your question about legislative history and to bring in the Norris-LaGuardia Act, which would be the third step of the analysis you'd have to go through, if you look at the Norris-LaGuardia Act and its forbidding of yellow dog contracts, it's clear from the legislative history that a yellow dog contract was not simply you can't join a union, but you can't join an AFL-CIO union or you can't join the mine workers. Those agreements to forbid that type of collective action, Congress clearly intended to forbid even though they allowed other collective action. So you can't say you can share expenses, you can talk to your fellow employees about suing, but you can't join your claims and you can't file a representative action and you can't opt in to a representative action. That is, you can't, if you're the employer, require the ceding of a statutory right, even if you allow some part of it still to be exercised. That's clear from the legislative history of Norris-LaGuardia. It's exactly like those types of agreements which allowed certain types of exercise but not others, which Section 3 of Norris-LaGuardia Act was aimed at. And that's the third part of the analysis, which no court, even those courts which have ruled for the employers in these cases like the Fifth Circuit, has gotten to. The Fifth Circuit dismissed Norris-LaGuardia in a footnote. But what's important about Norris-LaGuardia is that even before the NLRA, agreements to cede statutory rights, agreements to cede the ability to engage in collective activity were unenforceable. That is, what's unique about this statute is not only that the substantive right is the right to engage in collective action in court or otherwise, but that agreements just like this one have been a target of the Congress since before the Act. And that's what's important about Norris-LaGuardia. And the reason why you have to take that step is you get through the first two. Do most states have many NLRAs? The NLRA preempts state law. So there are no worker agencies? I was trying to figure out if there was any analog at the state level. There just isn't. Only in the public sector and in some states, very narrow statutes for employees who are exempt from the NLRA. But it would apply the same to those, so the public sector setting? That's correct, Your Honor. That is, you do have state laws in some states, Ohio, for example, of course, which are many NLRAs for public employees. And your rule would apply there? You would be able to void class action waivers and so forth? That would be correct, Your Honor. If the state of Ohio, for example, imposed as a condition of employment that all employees had to agree not to take any form of concerted action in court or in arbitration against the state for grievances arising out of their work, that would violate the state law if it was parallel to the NLRA. So in conclusion, those are the three steps that you would have to go through. We, of course, agree with the Board and the Seventh Circuit and the Ninth Circuit as to the application of the Savings Clause. But even if you disagree with that and you look at the jurisprudence under the FAA, it makes very clear that you may not have an agreement which weighs a substantive right, and this is a substantive right no different than the right to petition under the First Amendment. Even if you do disagree with that, you have to go to North LaGuardia because North LaGuardia clearly says this agreement is unenforceable in federal court. You want us to march ahead with the decision no matter what the court does with these pending cert petitions? Your Honor, you point to a number of very perplexing uncertainties in which we are standing in the middle of right now. I think it is very unclear what the court will do, very unclear when the court will have a ninth. I mean, I think it's easy. If the court doesn't grant them, we have to decide. I think that one's easy. But I guess the real question is if they grant, should we march ahead or what's your preference? We would appreciate a decision. We think this is a developing jurisprudence. We think as courts have considered it more thoroughly, they have sided with the board's judgment, and we would appreciate the judgment of this court. Thank you very much. I guess I'll start with that. We do, too. And the only other thing I'd add is that there are two vacancies on the board which the president can fill relatively quickly, and that, of course, could change the board's position because it's currently two to one on that issue. Turning to the points Mr. Rubin made, I'd like to start by saying the board is limited to the arguments the board made. The arguments about- Who's Mr. Rubin? He's still in the second service. Sorry, my bad. The NLRB. The union. The union. Sorry. My apologies. The board's limited to the arguments the board made. They can't be expanded by their amicus. So the whole riff about the Norris LaGuardia, that's not an argument the board has ever relied on. And the bit about vindicating substantive rights, the board, in its underlying decisions, has always relied on either or on both of the savings clause and the contrary congressional command. It has never separately argued that this third exception, which Justice Scalia recognized in Italian colors to be an independent exception, they've never relied on that as a basis for their rule. But I'm going to take it on anyway. The Supreme Court has addressed this- Just to clarify where we are, I just want to make sure I'm following you. Yes. I'm not 100% sure I am. Are you now making arguments on the assumption you're right about how to deal with the savings clause and the conception controls? In other words, what do you do next? Is that where you are? Well, I'm just saying they've sort of- I'm not complaining. I just want to be able to read along and follow it. You could put it that way. I'm just making an alternative argument that I'm responding to. All right. Okay. This vindication of statutory rights exception, which the court discussed at some length in Italian colors, has been mentioned in several cases, but never once has the court found it applicable. All of those cases dealt with the deprivation or when they talked about what it meant. They talked about depriving someone of their cause of action or their remedy for the cause of action. So if you said you can't bring a claim for treble damages, that would be a problem because the antitrust laws, that's part of the remedy. But the court has never even hinted that the deprivation of a procedure would satisfy that standard. So even if you accept the proposition that they can raise that as an independent basis for supporting the board's decision, I think it's an exception that doesn't apply. And I'd also like to secondarily say the term substantive right, which they invoke, again, is not a valid interpretation. And I feel like I have to read from the Emporium Capwell case because that's where the court says it's procedural. It says Section 7 rights are protected not for their own sake, but as an instrument of the national labor policy of minimizing industrial strife by encouraging the practice and procedure of collective bargaining. In other words, they're a means to the end. by the respondents in that case confuses the employee's substantive right to be free of racial discrimination under Title 7 with the procedures available under the NLRA for securing these rights. So again, they're very clear that it's a procedure. Even the things that are core to Section 7, they're talking about collective bargaining and unionizing, even those they see as procedural. And then finally, I'd like to reinforce the point that Judge Sutton made about not giving adequate weight to the FAA. And in a case that the union themselves cite, the Southern Steamship case, which is a very interesting read, I might say, because it involved mutiny, the court was confronted with the question whether a strike by maritime workers, which constitutes mutiny, is protected by the NLRA. And the court and the board wanted it to be. And the court said, it is sufficient for this case to observe that the board has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important congressional objectives. That's exactly what they're asking this court to do.  Thank you. It's been on for a long time, too. But we've enjoyed learning all about this case from all four of you. And thank you very much. The case will be submitted with the clerk call.